# Exhibit A

Electronically FILED by Superior Court of California, County of Los Angeles on 01/17/2023 12:00 AM David W. Slayton, Executive Officer/Clerk of Court, by Y. Tarasyuk,Deputy Clerk
Case 2:23-cv-01278-SVW-AGR    Document 8    23STCV00833    Filed 02/21/23    Page 2 of 9    Page ID #:16
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Stephen Goorvitch

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

# COUNTY OF LOS ANGELES

| | |
|---|---|
| MIGUEL ESPARZA,<br><br>    Plaintiff,<br><br>    v.<br><br>LEGO SYSTEMS, INC., a Delaware corporation d/b/a LEGO.COM, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 23STCV00833<br><br>**COMPLAINT FOR VIOLATIONS OF**<br>**(1) PENAL CODE § 631; AND**<br>**(2) PENAL CODE § 632.7** |

## I. INTRODUCTION

**Defendant (1) secretly wiretaps the private conversations of everyone who communicates through the chat feature at www.lego.com (the "Website"); and (2) allows at least one third party to eavesdrop on such communications in real time and during transmission to harvest data for financial gain.**

**Defendant did not obtain plaintiff's consent to either the wiretapping or the eavesdropping. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA").**

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over all causes of action asserted herein.

2. Venue is proper in this Court because Defendant knowingly engages in activities directed at consumers in this County and engaged in the wrongful conduct in this County.

3. Any out-of-state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

## III. PARTIES

4. Plaintiff is a resident of California.

5. Defendant owns, operates, and/or controls the Website.

6. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

8. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

9. The California Invasion of Privacy Act ("CIPA") prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. Compliance with CIPA is easy, and the vast majority of website operators comply by conspicuously warning visitors when their conversations are being recorded or if third parties are eavesdropping on them.[1]

10. Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant both **wiretaps** the conversations of all website visitors and allows a third party to **eavesdrop** on the conversations in real time during transmission. Why? Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight. . .***When people are chatting, you have direct access to their exact pain points.**"). See https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (downloaded December 2022).

11. Defendant's wiretapping and eavesdropping are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, Defendant's actions violate both industry norms and the legitimate expectations of consumers.[2]

12. To enable the **wiretapping**, Defendant has covertly embedded software code that functions as a device and contrivance into its website that automatically intercepts, records and creates transcripts of all conversations using the website chat feature. To enable the **eavesdropping**, Defendant allows at least one independent third-party vendor to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of Defendant's chat communications with

---

[1] *See* www.leechtishman.com/insights/blog ("*CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA.*") (last downloaded December 2022).

[2] According to a recent poll, nearly eight in ten Americans believe that companies do not collect or share consumer data gathered online, while about seven in ten believe that they remain anonymous when engaged in online activities like web browsing and chatting. *Se*e https://www.ipsos.com/en-us/news-polls/data-privacy-2022 (last downloaded December 2022).

unsuspecting website visitors – even when such conversations are private and deeply personal. The data from those transcripts are then used for targeted marketing or other purposes.

13. Defendant neither informed visitors of this conduct nor obtained their consent to these intrusions.

14. Given the nature of Defendant's business, visitors often share highly sensitive personal data with Defendant via the website chat feature. As noted above, visitors would be shocked and appalled to know that Defendant secretly records those conversations, and would be even more troubled to learn that Defendant allows a third party to eavesdrop on the conversations in real time under the guise of "data analytics."

15. Defendant's conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

16. Plaintiff is a consumer privacy advocate with dual motivations for initiating a conversation with Defendant. First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by California law. As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

17. In enacting CIPA, the California legislature intentionally chose to extend its protections to all "persons" utilizing public telephone lines. Indeed, because the legislature expressly extended protection to persons beyond individuals claiming pecuniary loss, statutes like CIPA are largely enforced by civic-minded "testers" such as Plaintiff. See *Tourgeman v. Collins Fin. Servs.*, Inc., 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).[3]

---

[3] Civil rights icon Rosa Parks was acting as a "tester" when she initiated the Montgomery Bus Boycott in 1955, as she voluntarily subjected herself to an illegal practice to obtain standing to challenge the practice in Court. *See* https://www.naacpldf.org/press-release/ldf-pays-tribute-to-rosa-
Continued on the next page

18. Within the last year while in California, Plaintiff visited Defendant's Website. Plaintiff used a smart phone (a cellular telephones with an integrated computer to enable web browsing) and had a conversation with Defendant using the chat feature on Defendant's website. As such, Plaintiff's communications with Defendant were transmitted from a "cellular radio telephone" as defined by CIPA.

19. By definition, Defendant's chat communications from its website are transmitted to website visitors by telephony subject to the mandates of CIPA: "[T]hough written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022). *See also* https://www.britannica.com/technology/Internet ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last downloaded December 2022).

20. Defendant did not inform Plaintiff that Defendant was secretly recording their conversations or allowing, aiding, and abetting a third party to intercept and eavesdrop on them in real time. Plaintiff did not learn that Defendant secretly recorded their conversation or allowed a third party to eavesdrop upon it until after the conversation was completed and additional, highly technical research was completed.

21. Defendant did not obtain express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did plaintiff know at the time of the conversation that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them.

**22. Plaintiff brings this Complaint as an individual action. If Defendant does not take appropriate steps to remedy the illegal conduct, Plaintiff will file an amended Complaint on behalf of a class of similarly aggrieved consumers.**

---

Continued from the previous page
parks-on-the-sixtieth-anniversary-of-her-courageous-stand-against-segregation/ "(*Contrary to popular myth, Rosa Parks was not just a tired seamstress who merely wanted to sit down on a bus seat that afternoon. She refused to give up her seat on principle. Parks had long served as the secretary of the Montgomery branch of the NAACP [and] challenging segregation in Montgomery's transportation system was on the local civil rights agenda for some time.*") (last downloaded December 2022).

**FIRST CAUSE OF ACTION**

**Violations of the California Invasion of Privacy Act**

**Cal. Penal Code § 631**

23. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". ***Here, Defendant does all three.***

*24.* Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).

25. The software embedded on Defendant's Website to record and eavesdrop upon the communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

26. At all relevant times, Defendant intentionally caused the internet communication between Plaintiff with Defendant's Website to be recorded. Defendant also aided, abetted at least one third party to eavesdrop upon such conversations during transmission and in real time.

27. Plaintiff did not expressly or impliedly consent to any of Defendant's actions.

28. Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

**Violations of the California Invasion of Privacy Act**

**Cal. Penal Code § 632.7**

29. Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." As summarized by the California Supreme Court in *Smith v. Loanme*, under section 632.7(a) it is a crime when a person intercepts or records "a communication transmitted between a cellular or cordless telephone and another telephone." Stated differently, only one party to the conversation needs to be using a cellular phone for the prohibitions of Section 632.7 to apply.

30. Section 632.7 defines "Communication" exceptionally broadly – including not only voice communication, but also communications transmitted by "data, or image, including facsimile." Text messages sent from a smart phone to a computer or internet, like the messages at issue here, are considered data transmissions via cellular telephony to landline telephony, thus subject to Section 632.7. *See* https://www.techtarget.com/searchmobilecomputing/definition/texting ("*Text messaging is the act of sending short, alphanumeric communications between cellphones, pagers or other hand-held devices, as implemented by a wireless carrier. . .* ***Users can also send text messages from a computer to a hand-held device. Web texting, as it's called, is made possible by websites called SMS gateways.***") (last downloaded December 2022).

31. Courts have applied Section 632.7 to internet data communications like those at issue here. *See Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) Moreover, Section 637.2 "apply to all communications, not just confidential communications." *Kearney v. Salomon Smith Barney*, *Inc.* (2006) 39 Cal.4th 95, 122.

32. Plaintiff communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7.

33. Defendant's communication from the chat feature on its website is transmitted via telephony subject to the mandates and prohibitions of Section 632.7.

34. As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

35. As set forth above, Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

36. Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7, entitling Plaintiff to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order declaring Defendant's conduct violates CIPA;
2. Statutory damages pursuant to CIPA;
3. Punitive damages;
4. Reasonable attorneys' fees and costs; and
5. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: January 15, 2023                     PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff